## Wytheville.

## A. L. OLDAKER, AN INFANT, &C. V. VIRGINIA RAILWAY AND POWER COMPANY

### AND

## A. A. OLDAKER V. VIRGINIA RAILWAY AND POWER COMPANY.

### June 16, 1921.

CROSSINGS—*Last Clear Chance—Case at Bar.*—Plaintiff, riding upon one mule and driving three others came to a crossing over defendant's double tracked railroad and stopped to allow a car to pass. After the car had passed, plaintiff looked along the tracks in one direction and saw a car approaching about three or four hundred yards away. He looked in the other direction and failed to see a car about the same distance away. With his whole attention obviously upon the car which he had observed he hurried to cross, thinking he had time, and was struck by the car that he had not seen. The track was straight and there was nothing to obstruct the motorman's view of the crossing and of the attitude and peril of plaintiff. Notwithstanding, the motorman made no attempt to check the speed of the car and sounded no warning. On the other hand, the motorman of the other car which was approximately at the same distance away when plaintiff's perilous position became obvious, stopped his car before it reached the crossing.

*Held*: That the motorman of the car that struck plaintiff had the last clear chance to prevent the accident.

Error to judgments of the Circuit Court of Norfolk county in actions of trespass on the case. Judgment for defendant. Plaintiffs assign error.

*Reversed, and final judgment entered for plaintiffs.*

These are two separate actions of trespass on the case, seeking to recover damages for injuries occasioned in one and the same accident, which occurred at a road crossing of the railroad of the defendant. The injury involved in the first above entitled case was the personal injury of the plaintiff while driving certain mules across the railroad at the road crossing; and the injury involved in the second above entitled case was injury to the mules.

The cases were, by consent of parties, tried together by one jury. After all the evidence was in, both for the plaintiffs and defendant, there was a demurrer to the evidence by the defendant, and verdicts of the jury in favor of the plaintiffs, subject to the demurrer to evidence. Upon consideration thereof, the trial court sustained the demurrer, entered judgments for the defendant dismissing both cases, and the plaintiffs bring error.

The material facts in the case, as they must be deduced by us under the rule applicable to the consideration of the evidence (the evidence and not the facts being certified), are as follows:

The accident occurred about 5:45 o'clock on the afternoon of a day in June, and hence in broad daylight. The plaintiff in the first above entitled suit, a boy under twenty-one years old, but whose precise age does not appear from the record, had been engaged with the team of four mules in doing some railroad grading work during the day. He had quit work, unhitched the mules, but left the harness on, and was taking the mules from the place of work to the stable, driving the mules two abreast, two mules in front and two behind, the driver, the infant plaintiff, riding one of the rear mules. The road along which the mules were being taken to the stable, as it approached the crossing, ran alongside the railroad and at the crossing turned and crossed the double tracks of the defendant, a street railway company, at right angles approximately. There are two tracks, one

used by cars going from Norfolk to the Naval Base, and the other by cars going in the opposite direction, both tracks being straight for a long distance on both sides of the crossing. The tracks are on the right of way owned by the defendant. The cars are operated by electricity. As the driver of the mules came to the crossing, he stopped to allow a street car to pass. Upon the passing of this car the driver looked along the tracks towards the Naval Base, and saw a car approaching, which was, as he estimates the distance, three or four hundred yards away from the crossing, and immediately thereafter he looked along the tracks in the opposite direction and failed to observe another car coming from the direction of Norfolk which was, as other witnesses for the plaintiffs testified and estimated the distance, three or four hundred yards away. He at that moment, when the two cars approaching the crossing were the equal distance away of about 900 to 1,200 feet, with his whole attention being obviously given to the car he first looked at, and without looking again towards the car which he had not observed but which was approaching from the opposite direction, drove the mules ahead, "hurrying across" with all the speed he could get the mules into, with the purpose of crossing the railroad tracks, thinking he had time to do so. The mules were moving slowly, somewhat obliquely as they came upon the railroad track upon which the accident occurred, one of the two leading mules being somewhat ahead of its companion, and one of the two rear mules being somewhat ahead of the other. As the leading mule, farthest ahead, came upon the track upon which the accident occurred, the car approaching from the direction of Norfolk, which the infant plaintiff was not watching (having his attention wholly engrossed in watching the other car coming from towards the Naval Base, as aforesaid), was then between three and four hundred yards away, according to two witnesses for the plaintiffs, on the straight track aforesaid,

with nothing to obstruct the view by its motorman of the crossing and of the attitude and peril of the infant plaintiff and of the mules. The motorman was at his place of duty, with no other duty engaging him to interfere with his duty of outlook, so far as the evidence discloses. The mules and their driver were in the act of moving across the track on which the accident occurred while the car last named was traveling the distance of between 300 and 400 yards, or between 900 and 1,200 feet, after the motorman was in full and unobstructed view of them as aforesaid. The mule farthest in front had almost crossed the track on which the accident occurred and the rear mules had come upon such track, and the mules were all moving as aforesaid, "In the ordinary gait of a mule's walk" (as testified by a witness for the plaintiffs), although the driver was "hurrying" them all he could, when the car last named, traveling at the unchecked speed of about thirty-five miles an hour, struck the mules and caused the injuries to them and to the infant plaintiff complained of. The motorman made no attempt to check the speed of the car and sounded no warning, except that one witness for the plaintiffs testified that, "as the motorman got nearer to the mules the motorman made some kind of an outcry," just before the collision occurred.

Touching the position of the mules and the infant plaintiff, being an obvious unconscious position of peril from the moment they started across the railroad track immediately following the passing of the street car which the driver stopped to allow to pass as aforesaid, and concerning the distance the street car which caused the injuries was away, with the motorman having a full view of such unconscious position of peril at the time, one of the witnesses for plaintiffs testified as follows:

"The mules waited awhile and directly a car went by. Just as it went by the man on the mules started across, watching the car coming from the Base * * * and he was

judging that to see when he could get by. We all began to look and I said there would be an accident. * * *

"Q. Now, Mr. Patterson, you saw the mules when they started?

"A. Yes, sir.

"Q. How far away, as near as you can say, was the car that struck the mules when the boy started across the track with them?

"A. I would say, possibly three or four hundred yards, when we began to see the car coming and wondered whether he would get across.

"Q. It was three or four hundred yards, you say? ·

"A. Yes.

   ✻      ✻      ✻      ✻      ✻      ✻      ✻      ✻

### Cross-Examination.

"Q. I understand you to say when the mules were on the track that the car, when you first saw the car that struck them, was three or four hundred yards away?

"A. Yes, sir, approximately, and we kept watching it and said we thought it would be an accident. I said to one of the boys sitting there, 'That car is going to hit the mules,' and when he got close he made some kind of holler.

"Q. Do you know Mr. Horning, the gentleman on the stand?

"A. Yes, sir. ·

   ✻      ✻      ✻      ✻      ✻      ✻      ✻      ✻

"Q. He said just now when he saw it he thought it was about three or four hundred feet. Which do you think is right?

"A. You see the grocery store there, I expect is something like four hundred yards from this crossing; he had passed the grocery store a little bit, and I judge it was between three and four hundred yards.

   ✻      ✻      ✻      ✻      ✻      ✻      ✻      ✻

"Q.   Where were the mules when it was three or four hundred yards off?

"A.   On the track.

"Q.   On the track?

"A.   Yes, sir, and the car coming three or four hundred yards, I should say.

\*        \*        \*        \*        \*        \*        \*        \*

*Re-Direct Examination.*

\*        \*        \*        \*        \*        \*        \*        \*

"Q.   Your idea is that when the mules were on the crossing the car was at least three or four hundred yards away?

"A.   Yes, sir.   I wondered what he was going to do, whether he would ram into them, and he kept coming."

Another witness for plaintiffs testified on this subject as follows·

" \* \* \* After that car passed he started across \* \* \* and as I looked up again I said, 'There is going to be the devil here directly,' and the car from Norfolk struck him.   \*   \*   \*

"Q.   Did you see him go on the crossing?

"A.   I saw him go up on the crossing.

"Q.   How far away was the car which struck him when he went on the crossing?

"A.   I judge that car was between three and four hundred yards. \* \* \*

"Q.   Tell the jury how you estimate that distance of three or four hundred yards?

"A.   I have been used to measuring distances pretty much all my life.   I am a carpenter by trade, and I think I can come pretty close to it. I could swear positively it was between three and four hundred yards.

\*        \*        \*        \*        \*        \*        \*        \*

"Q.  Was one mule ahead of the other?

"A.  You know in riding mules one will lag behind. * *

"Q.  Were they on the track?

"A.  They were starting across.

"Q.  Is the track straight?

"A.  Yes, sir.  You can see up and down the road a pretty good distance.

"Q.  Was there anything to obstruct the motorman's view?

"A.  Not a thing.

"Q.  Did he seem to slow down?

"A.  No. * * *

*Cross-Examination.* ·

*       *       *       *       *       *       *       *

"Q.  Was there anything to keep the motorman of the car that was coming from Norfolk, that did the damage, from seeing the mules as they started to come on the track?

"A.  Nothing on earth.

"Q.  Was there anything to keep the man who was driving the mules from seeing the car if he had looked in that direction?

"A.  I judge mules, after you work them hard all day, it is impossible to hurry mules.

"Q.  I didn't ask you that.  You say the motorman could see the mules as they came on the track.  I ask you if the man on the mules had been looking in the direction of the car, was there anything to keep him from seeing the car?

"A.  No.

"Q.  He could have seen the car three or four hundred yards, or half a mile away, if he had looked up?

"A.  Between three and four hundred yards, I say.  He could have seen them at that, but hurrying across, he

seemed to be hurrying across when they were struck, and I looked up and said, 'There is going to be the devil here.'

"Q.   As soon as you looked up and saw the relative positions of the mules and car you felt there would be an accident?

"A.  I almost knew it.   It was almost impossible to get out of the way because the car was coming at a very rapid speed and there was no signal given at all.

"Q.   That is when you first saw the car and first saw the mules?

"A.   Yes, sir.   *   *"

The railroad track on which the accident occurred was the first track which the infant plaintiff and the mules came to at the crossing.   The car which engrossed the attention of the infant plaintiff, as aforesaid, while he was attempting to hurry across both railroad tracks, as the testimony for plaintiff shows, blew a warning whistle as it approached and that car in fact had not reached the crossing when the accident occurred, and came to a stop before reaching the crossing.

There is no express evidence in the case with respect to the distance within which the motormen on the cars, both of which were approaching the crossing, could by the exercise of due care have stopped the cars, respectively, after they saw, or in the exercise of due care should have seen, the perilous position aforesaid of the infant plaintiff and the mules.   But from the facts that the cars were 900 to 1,200 feet away, and were both approximately that equal distance away when such perilous position became obvious, and that one of the cars was thereafter stopped before it reached the crossing, the inference must be drawn, on demurrer to the evidence, that by the exercise of due care on

the part of its motorman, the car which caused the accident could have been stopped after the motorman of that car saw, or in the exercise of due care should have seen the aforesaid need therefor, before the collision occurred.

*S. M. Brandt,* for the plaintiffs in error.

*Williams, Loyall & Tunstall,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The case presents no question of law which is not well settled; but purely questions of fact. And in the view we take of the evidence there is only one question of fact to which we need give consideration, and that is the following:

1. Does this case fall within the doctrine of the last clear chance?

In view of the facts which appear from the statement preceding this opinion, and which need not be repeated here, we are of opinion that this question must be answered in the affirmative.

The case must, therefore, be reversed and judgment will be entered for the plaintiffs under section 6365 of the Code.

*Reversed and final judgment for plaintiffs.*